UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEISA RIVERA,

                              Plaintiff,        **1:15-cv-0487-MAT**

                                                              **DECISION AND ORDER**

                -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                              Defendant.
_____

## I. Introduction

Represented by counsel, Heisa Rivera("plaintiff") has brought this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("defendant" or "the Commissioner") denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

**II. Procedural History**

On December 15, 2011, plaintiff protectively filed an application for SSI. Administrative Transcript ("T.") 73. Plaintiff's claim was initially denied, and she timely requested a hearing before an administrative law judge ("ALJ"). T. 74-78. ALJ Curtis Axelson held a hearing on October 21, 2013, and November 7, 2013, at which plaintiff was represented by attorney Kelly Laga. T. 37-66. On January 9, 2014, ALJ Axelson issued a decision in which he found plaintiff not disabled. T. 13-34. Plaintiff's request for Appeals Council review was denied on April 14, 2015, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff subsequently commenced the instant action.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 15, 2011, the alleged onset date. T. 21. At step two, the ALJ found that plaintiff had the severe impairments of depression, posttraumatic stress disorder ("PTSD"), learning disorder, and asthma and the non-severe impairments of diabetes, hypertension, and hypothyroidism. T. 21-23. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T. 23. Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of

2

work at all exertional levels, with the following non-exertional limitations: is limited to work involving unskilled, routine, repetitive tasks and limited concentration, and is limited to environments without excessive environmental irritants. T. 25. At step four, the ALJ found that plaintiff had no past relevant work. T. 32. At step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. T. 33. Accordingly, the ALJ found that plaintiff was not disabled as defined in the Act. *Id*.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must

independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

**V.  Discussion**

Plaintiff requests the Court to remand this matter for further administrative proceedings, arguing that: (1) the ALJ failed to properly take into account her illiteracy; (2) the ALJ failed to properly evaluate the impact of plaintiff's asthma on her ability to work; (3) the ALJ failed to properly evaluate the impact of plaintiff's obesity on her RFC; (4) the ALJ failed to properly evaluate the impact of plaintiff's visual impairment on her ability to work; and (5) the ALJ failed to properly consider the combined effects of plaintiff's severe and non-severe impairments.  In response, the Commissioner requests the Court to uphold her determination that plaintiff is not disabled, arguing that it was supported by substantial evidence and free from legal error.  For the reasons discussed below and based on a review of the record evidence, the Court finds that the Commissioner's determination that plaintiff is not disabled is supported by substantial evidence and is not subject to remand.

**A.  Consideration of Plaintiff's Illiteracy**

Plaintiff was born and raised in Puerto Rico and is Spanish speaking.  It is undisputed that she has only a second grade education and is unable to read or write in either Spanish or

English.  Plaintiff further claims that she is unable to speak any English, although, as the ALJ noted in his decision, there is evidence in the record indicating that she has some degree of English language capability.  *See* T. 30.  The ALJ expressly noted in his decision that plaintiff is illiterate (T. 32), and the Commissioner does not dispute that conclusion here.

Plaintiff argues that, because she is illiterate, it was impermissible for the ALJ to rely on the Medical-Vocational Guidelines (the "Grids") in determining that she was not disabled. She contends that the Dictionary of Occupational Titles (the "DOT"), of which the Commissioner's regulations take administrative notice, provides that all the jobs identified therein require the ability to read 95-120 words per minute, recognize 2,500 two and three syllable words, and print simple sentences, and that she lacks any such ability.  Accordingly, she argues that the ALJ was required to consult with a vocational expert ("VE") before determining that she was capable of substantial gainful employment despite her illiteracy.

In response to plaintiff's argument, the Commissioner points out that the Grids directly contradict the DOT, and provide that an individual who is illiterate or unable to communicate in English is not disabled, as a matter of law, if she is (1) a younger individual and (2) can perform at least light work.  *See* 20 C.F.R. 404, Subpart P, Appendix 2, Rule 202.00(g) ("The capability for light work, which includes the ability to do sedentary work,

represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.") (emphasis added); *see also Young v. Comm'r of Soc. Sec.*, No. 2:11-CV-1283 CMK TEM, 2012 WL 3249506, at *6 (E.D. Cal. Aug. 7, 2012), *aff'd*, 594 F. App'x 914 (9th Cir. 2014) (noting that the Grids "indicate that plaintiff's alleged illiteracy as a younger individual age 18-44 in itself does not militate in favor of disability at any exertional level"); *Boykin v. Apfel*, No. CIV.A. 98-0774-BH-S, 2000 WL 284201, at *3 (S.D. Ala. Feb. 22, 2000) ("illiteracy does not significantly restrict the range of unskilled light . . . jobs available under the Grids").

The Court agrees with the Commissioner that the ALJ properly relied upon the Grids in determining that plaintiff was not disabled. While the Commissioner's regulations do indeed take notice of the DOT, federal courts have squarely rejected the contention that an ALJ is bound by the DOT's definitional requirements regarding language ability, which would "in effect make illiteracy a per se disability." *Warf v. Shalala*, 844 F. Supp. 285, 289 (W.D. Va. 1994). While plaintiff in this case contends that she is not arguing that the Commissioner must find all illiterate claimants disabled, her argument that the ALJ is required to call a VE in every case involving an illiterate claimant is similarly inconsistent with the Grids.

6

*Carter v. Barnhart*, No. 05-38-B-W, 2005 WL 3263936 (D. Me. Nov. 30, 2005), on which plaintiff relies for her contention, is inapposite. There is no indication that the plaintiff in *Carter* was illiterate, nor did the *Carter* court consider or address the Grids' explicit instruction that a younger individual who is capable of light work is not disabled even if illiterate or unable to communicate in English. Instead, the *Carter* decision addresses whether an individual who is limited to simple repetitive tasks is capable of performing jobs defined in the DOT as requiring a reasoning development level of 3. *Id*. at *2. That issue simply is not present in the instant case.

In sum, plaintiff has failed to demonstrate that her illiteracy rendered the ALJ's reliance on the Grids inappropriate, particularly in light of the Grids' explicit discussion of the impact of illiteracy in a younger individual capable of light work. As such, plaintiff has not shown that remand is required on this ground.

### B. Consideration of Plaintiff's Asthma

Plaintiff's next argument is that the ALJ failed to properly consider and account for the impacts of her asthma in determining her RFC. In particular, plaintiff contends that the ALJ erred in finding that she was only required to avoid "excessive" environmental irritants.

The ALJ's conclusion regarding the impacts of plaintiff's asthma is supported by substantial evidence. The medical evidence

of record regarding plaintiff's asthma does not support the conclusion that it imposes a more serious restriction than that assessed by the ALJ. As the Commissioner correctly notes, there are no abnormal respiratory findings in plaintiff's medical records, and she only complained of respiratory symptoms to a medical provider on one occasion. *See* T. 429. Moreover, the medical record reveals that plaintiff was not taking any preventative medication for her asthma, and instead treated it solely with an acute inhaler.

Plaintiff contends that the ALJ's RFC determination was inconsistent with the opinion of consultative examiner Dr. John Schwab. Dr. Schwab examined plaintiff on February 28, 2012, and plaintiff reported that she had asthma, for which she used an unspecified inhaler, and that the trigger for her asthma was "weather, especially in Buffalo, but not in Puerto Rico." T. 291. Dr. Schwab subsequently opined that plaintiff should "avoid any activity that triggers her asthma." T. 294. The Court finds that the ALJ's restriction of plaintiff to environments without excessive respiratory irritants is fully consistent with Dr. Schwab's opinion. Dr. Schwab's opinion was based on plaintiff's self-reported symptoms, including plaintiff's statement that her asthma attacks were triggered solely by the weather in Buffalo. As such, it was reasonable and appropriate for the ALJ to interpret Dr. Schwab's opinion as simply limiting plaintiff to

8

environments without extremes of cold, as one would find in Buffalo in the winter.

No medical source of record apart from Dr. Schwab opined regarding any restrictions associated with plaintiff's asthma, nor has plaintiff pointed to any medical evidence of record to support the conclusion that she is unable to withstand any environmental irritants, as she now claims. To the extent plaintiff is arguing that the ALJ was required to credit her subjective complaint that her asthma was poorly controlled, she is incorrect. An ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ in this case performed a thorough assessment of plaintiff's credibility and found her not fully credible, explaining that she had made numerous unexplained, contradictory statements regarding her condition. *See* T. 30. Having appropriately determined that plaintiff was not fully credible, the ALJ was not required to credit her subjective complaints regarding her asthma, which were unsupported by the medical evidence.

### C. Consideration of Plaintiff's Obesity

Plaintiff also argues that the ALJ failed to properly evaluate the impact of her obesity on her RFC. Plaintiff notes that she is five feet, five inches tall and weighed over 300 pounds during the relevant time period, rendering her morbidly obese. She

9

argues that the ALJ failed to mention her obesity in his decision, and that he should have found it to be a severe impairment and considered its impact on her ability to do basic work activities.

"Obesity is not in and of itself a disability," but "[a]n ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working." *Guadalupe v. Barnhart*, No. 04 CV 7644 HB, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005). However, "[a]n ALJ does not have a duty to evaluate a plaintiff's obesity where the plaintiff does not claim it as a disability, it was not diagnosed as a distinct medical condition, and no medical source found it as a significant factor in the plaintiff's ability to perform basic work activities." *Ryan v. Colvin*, No. 15-CV-74S, 2017 WL 2240256, at *5 (W.D.N.Y. May 23, 2017); *see also Pokluda v. Colvin*, No. 1:13-CV-335 GLS/ESH, 2014 WL 1679801, at *9 (N.D.N.Y. Apr. 28, 2014) (same). Moreover, an ALJ may "implicitly factor[] [a claimant's] obesity into his RFC determination by relying on medical reports that . . . note[] [the claimant's] obesity and provide[] an overall assessment of her work-related limitations." *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011); *see also Guadalupe*, 2005 WL 203380 at *6 ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into the[] decision[].").

In this case, although there are sporadic mentions of plaintiff's obesity in the medical record, no provider or medical source ever identified it as a significant factor in plaintiff's ability to perform basic work activities. Moreover, plaintiff did not claim her obesity as a disability, and she "neglected to mention it when asked by the ALJ to describe why she was unable to work." *Guadalupe*, 2005 WL 203380 at *6; *see* T. 51. Additionally, Dr. Schwab examined plaintiff and noted that she was five feet, five inches and weight 299 pounds, yet determined that her only physical limitations were a requirement to avoid activities that trigger her asthma and to avoid activities requiring good vision in two eyes. T. 292-294. Under these circumstances, the Court does not find that the ALJ erred in not explicitly addressing plaintiff's obesity. *See Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (ALJ did not err in failing to explicitly discuss plaintiff's obesity where "the record establishes that Plaintiff is obese . . . but is otherwise devoid of any evidence that Plaintiff's treating or examining sources considered Plaintiff's obesity a significant factor relative to Plaintiff's ability to perform basic work activities.").

The Court is not persuaded by plaintiff's contention that Dr. Ellis Gomez treated her for obesity. While Dr. Gomez did note that plaintiff was obese (*see* T. 422), it is clear from his treatment records that he was treating her for hypertension (*see id.* (noting that plaintiff "present[ed] with a complaint of

11

hypertension"). Importantly, under the "Assessments and Plans" section of his treatment notes, Dr. Gomez assessed plaintiff with hypothyroid, hyperlipidemia, hypertension, major depressive disorder, right buttock pain, and asthma, but did not list obesity as a separate diagnosis. T. 424-25. Accordingly, Dr. Gomez's treatment notes do not support the conclusion that he considered plaintiff's obesity a significant factor in her ability to perform basis work functions.

    D.    **Assessment of Plaintiff's Visual Impairment**

During his examination, Dr. Schwab performed an eye examination of plaintiff, which showed that her uncorrected vision was 20/30 in her right eye, 20/400 in her left eye, and 20/40 in both eyes on a Snellen chart at 20 feet. T. 292. Plaintiff contends that the ALJ erred in failing to mention or discuss this "visual impairment" in his decision.

Plaintiff's argument lacks merit. As the Commissioner points out, her regulations provide that, in order to establish a visual impairment, a claimant is required to demonstrate that she has deficits in her "<u>best-corrected</u> . . . visual acuity." 20 C.F.R. 4040, Subpart P, App'x 2, Rule 2.00(4) (emphasis added). In this case, there is no evidence in the record that plaintiff's vision issues could not be remediated with corrective lenses, and plaintiff never reported suffering from a vision impairment to her medical providers, nor did she identify it as a potential source of disability. *See* T. 217, 319. Under these circumstances, the Court

finds no error in the ALJ's omission of any discussion of plaintiff's vision.

### E. Consideration of Combined Impact of Impairments

Plaintiff's final argument is that the ALJ failed to consider the cumulative impact of her mental and physical impairments and instead considered them in isolation. Plaintiff is incorrect. The ALJ's decision makes it clear that his RFC determination was based on "the entire record, including the medical evidence, [plaintiff's] reported activities of daily living, her testimony, the statements of her brother[,] and [the medical opinion evidence]," and that he had considered "all [plaintiff's] symptoms." T. 25, 32. The ALJ's comprehensive discussion of the record supports these statements. This is sufficient to satisfy the ALJ's obligation to consider plaintiff's impairments in combination. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (remand not warranted where the decision "makes clear that [the ALJ] considered the combination of impairments and the combined effect of all symptoms in making his determination") (internal quotations omitted).

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 24) is granted.

Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

    **ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    January 11, 2018
           Rochester, New York.